595 So.2d 32 (1992)
Dick LOCKE, Petitioner,
v.
Paul M. HAWKES, Respondent.
FLORIDA HOUSE OF REPRESENTATIVES, Petitioner,
v.
Jon I. GORDON, Judge, etc., Respondent.
Nos. 76090, 76803.
Supreme Court of Florida.
February 27, 1992.
*33 Kevin X. Crowley of Cobb, Cole & Bell, Tallahassee, for Dick Locke and Florida House of Representatives.
Valerie W. Evans, Orlando, for Paul M. Hawkes
Parker D. Thomson and Scott A. Browdy of Thomson Muraro Bohrer & Razook, P.A., Miami, for amicus curiae, The Miami Herald, Tallahassee Democrat, Florida Press Ass'n, Florida Society of Newspaper Editors and Florida First Amendment Foundation.
Samuel A. Terilli, Jr. and Jerold I. Budney of the Miami Herald Publishing Co., Miami, for amicus curiae, The Miami Herald.
George K. Rahdert of Rahdert and Anderson, St. Petersburg, for amicus curiae, The Times Publishing Co.
George Freeman of The New York Times Com., New York City, for amicus curiae, The New York Times Regional Newspaper Group Florida Newspapers.
Gregg D. Thomas of Holland and Knight, Tampa, for amicus curiae, The Tribune Co.
Robert A. Butterworth, Atty. Gen. and Walter M. Meginniss, Sr. Asst. Atty. Gen. and Louis F. Hubener, Asst. Atty. Gen., Tallahassee, for Jon I. Gordon.
Edward S. Schwartz of the Law Offices of Philip M. Gerson, P.A., Miami, for David Singer intervenor.
OVERTON, Justice.
These two cases concern the applicability of chapter 119, Florida Statutes (1987) (Public Records Law), to the individual records, including the individual bank accounts, of members of the Florida Legislature. In the first case, Locke v. Hawkes, Paul M. Hawkes, a candidate who unsuccessfully opposed Representative Dick Locke in the 1988 campaign for a seat in the Florida House of Representatives, filed a request under chapter 119 for the production of all records maintained by Locke relating to the expenditures of state tax money allocated for the maintenance of his office. When Locke failed to produce the records to Hawkes' satisfaction, Hawkes filed suit to enforce section 119.11, Florida Statutes (1987).[1] Locke moved to dismiss, and the trial court dismissed the case on the grounds that it was without subject *34 matter jurisdiction under the separation of powers doctrine. The trial court also noted that, if it did have jurisdiction, it would find that chapter 119 does not apply to the legislative branch of government.
Hawkes appealed and the Fifth District Court of Appeal reversed. The district court stated:
Neither the opinion of some later legislative session nor of the individual legislators as to the construction of some statute enacted by an earlier legislature is relevant to a proper judicial interpretation of the earlier statute. The legislative intent that the judiciary must seek in construing a statute is the legislative intent of the legislature that passed the statute in question, not the intent of some other session of the legislature nor that of individual legislators.
Under the separation of powers provision of the Constitution of the State of Florida, Article II, Section 3, there may be a problem when the legislature enacts a statute affecting the executive branch or the judicial branch of government but there can be no separation of powers problem as to the legislature enacting a statute that applies to the legislature.
Hawkes v. Locke, 559 So.2d 1202, 1203-04 (Fla. 5th D.C.A. 1990) (footnote omitted). The district court distinguished our decision in Moffitt v. Willis, 459 So.2d 1018 (Fla. 1984), by stating that that case involved the internal records of the legislature and not the records in the office of a particular member. It expressed the view that "the `state officers' referred to in the basic public records law includes, but is not limited to, members of the legislature." Hawkes, 559 So.2d at 1204. Further, the district court concluded: "The language of the public records act includes members of the legislature and the public records in their custody and they are not exempted by the statute." Id.[2]
In the second case, Florida House of Representatives v. Gordon, David Singer filed suit in 1990 to compel the "production of all public records" of the office of Representative Susan Guber, a member of the Florida House of Representatives. Singer sought to have the circuit court enforce the provisions of chapter 119. The trial judge directed Representative Guber to serve a responsive pleading by a date prior to the 1990 election. The Florida House of Representatives, prior to the date by which Representative Guber was to respond, filed in this Court a petition seeking to prohibit the trial court from proceeding with the action against Representative Guber. We entered an order to show cause why that petition should not be granted, and we stayed all circuit court proceedings.[3] We then consolidated the cause with Locke v. Hawkes.
The House of Representatives, representing the legislators involved, asserts that: (1) the judiciary is without jurisdiction over legislative internal operating procedures under the separation of powers doctrine and (2) chapter 119, by its terms, does not apply to the Florida Legislature. In its separation of powers argument, the House notes that article III, section 4(a), of the Florida Constitution, provides that "[e]ach house shall determine its rules of procedure," and that we, in this instance, must apply article II, section 3, of The Florida Constitution which directs that "[n]o person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." It notes that we stated in McPherson v. Flynn, 397 So.2d 665, 667 (Fla. 1981), that "the doctrine of separation of powers requires that the judiciary refrain from deciding a matter that is committed to a coordinate branch of government by the demonstrable text of the constitution." The House argues that our decision in Moffitt v. Willis, 459 So.2d 1018 (Fla. 1984), controls because in that decision we expressly recognized that legislative meetings and records are subject to the exclusive control and direction of the legislature and not to the interpretative or coercive *35 power of the judicial branch. The House further contends that under this decision we are without jurisdiction to invade the legislature's internal procedures with respect to open meetings.
With regard to the second point, the House argues that the plain language of chapter 119, its statutory history, and all external indicia of legislative intent show that chapter 119 does not and was not intended to apply to the legislative branch of Florida government. In this argument, the House notes that section 119.011(2), Florida Statutes (1987), defines "agency" as follows:
"Agency" means any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.
In arguing that this definition does not include the legislature, the House of Representatives contends that the key phrase in this definition is a "unit of government created or established by law." The House, in other words, argues that the legislature is no more a creation of law than is the judiciary. The House further contends that chapter 119 is specifically directed to executive branch agencies because section 119.14(2)(c) provides, in part, that "the public has a right to have access to executive branch governmental meetings and records." (Emphasis added.) In addition, the House points out that, in section 119.14(3)(c), public records exemptions are defined in relation to "the executive branch of state government or to local government." (Emphasis added.) The House also notes that from time to time the legislature has considered and rejected proposed legislation that would have made the provisions of chapter 119 applicable to the legislature. In its brief, the House cites two bills introduced in 1978 which would have expressly put legislatively produced records in the same category as records generated by executive branch agencies already under chapter 119 and legislation introduced in 1989 which would have expressly included the House of Representatives and the Senate within the definition of "agency" set forth in section 119.011(2), Florida Statutes. It also notes that the House of Representatives has chosen, by legislative rule, to treat the availability of records different from the manner in which executive branch records are treated under chapter 119. It is the House of Representatives' position that, if the legislature had intended to include the legislative branch in the general statement of applicability, it would have simply done so and that, because it did not, such an inclusion may not be implied.
In response, Hawkes and Singer argue that the legislature, in enacting chapter 119, created a substantive right in the people of the State of Florida to inspect public records. They assert that the legislature did not exempt itself from the application of chapter 119. During oral argument, counsel for Hawkes asserted that chapter 119 applied to internal memos, notes, and other written materials of the personal staffs of members of the legislature. In petitioning for rehearing, the amici in support of the respondents assert that we should withdraw our original opinion and find that chapter 119 applies to the legislature and that separation of powers issues are not involved or, in the alternative, articulate through statutory construction why the particular records in this case are exempt from disclosure. The amici, in response to the separation of powers argument, contend that principle is not applicable since the legislature may adopt a law applicable to its own members.
As to the second issue, the amici in support of the respondents argue that we should give the policy statement in section 119.01(1), which states that "all state" records be open for public inspection, a broad enough interpretation to include the records of state officers, i.e., the members of the legislature as individuals. Furthermore, the amici contend that any state officer is within the definition of "agency," as it appears in section 119.011(2), and that the term necessarily includes a member of *36 the legislature whose records the press and public should have access to through the Public Records Law.
Two questions have been presented to the Court. First, does the separation of powers doctrine of the Florida Constitution prohibit the judicial branch from construing chapter 119 to apply to the legislature, and, second, was chapter 119 intended to apply to the legislature and its members?
The application of chapter 119 and its possible interference with the separation of powers provision is not a new issue. In The Florida Bar, 398 So.2d 446 (Fla. 1981), we were asked to determine whether the unauthorized practice of law investigative files maintained by the Bar were public records subject to inspection by members of the press under the authority of chapter 119, Florida Statutes (1979). We held that neither the legislature nor the governor could control what is purely a judicial function. In Moffitt, this Court found that the judicial branch could not constitutionally interfere with the internal activities of the legislature with regard to public meetings. We stated: "It is a legislative prerogative to make, interpret and enforce its own procedural rules and the judiciary cannot compel the legislature to exercise a purely legislative prerogative." 459 So.2d at 1022.
The drafters of our constitution emphasized the importance of the separation of powers doctrine by expressly stating that principle in our constitution. Article II, section 3, of the Florida Constitution provides: "The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein." This separation of powers provision was placed in our constitution to emphasize the balance of power between the three branches of state government. We have been very sensitive to separation of powers principles, as illustrated by our decisions in McPherson and Moffitt. Those cases expressed the philosophy that the control or influence by one branch of another branch's internal operating procedures could interfere with the independence of the second branch and possibly place the enforcing branch in a superior position. Article II, section 3, identifies the branches of our state government, and we hold that this provision was intended to apply to each branch's constitutional powers as enumerated in article III, the legislature, article IV, the executive, and article V, the judiciary. We hold that our separation of powers provision was not intended to apply to local governmental entities and officials, such as those identified in articles VIII and IX and controlled in part by legislative acts. As the supreme court of the judicial branch, one of our primary judicial functions is to interpret statutes and constitutional provisions. In carrying out this function, we find that we do not violate the separation of powers doctrine when we construe a statute in a manner that adversely affects either the executive or the legislative branch. Clearly, we have the power to determine whether chapter 119 is applicable to the legislature.
Having determined that we have the authority, we answer the question of whether chapter 119 applies to the legislature by finding that section 119.011's definition of "agency" does not, by its terms, include the legislature or its members. In common usage, "agency" is not understood to include a basic legislative branch of government. Further, the history reflecting the legislature's rejection of legislation in 1978[4] and 1989[5] that would have placed the legislature under chapter 119 and the specific references in the Act to local government and executive branch entities indicate that there was no legislative intent or understanding that the legislature was to be covered by these provisions. We find that, if the legislature and its members were intended to be covered, it would have said so. Expressio unius est exclusio alterius. "[W]here a statute enumerates the things on which it is to operate, or forbids certain things, it is ordinarily to be construed as excluding from its operation all those not expressly mentioned." Thayer v. *37 State, 335 So.2d 815, 817 (Fla. 1976) (emphasis added); see also Department of Professional Regulation, Const. Indus. Licensing Bd. v. Pariser, 483 So.2d 28 (Fla. 1st D.C.A. 1985); Douglas v. Michel, 410 So.2d 936 (Fla. 5th D.C.A. 1982), approved, 464 So.2d 545 (Fla. 1985). We find that the definition of agency in section 119.011, while not intended to apply to the legislature, was intended to apply to executive branch agencies and their officers and to local governmental entities and their officers; the definition applies particularly to those entities over which the legislature has some means of legislative control, including counties, municipalities, and school boards, and state agencies, bureaus, and commissions, and private business entities working for any of these public entities and officials.
Accordingly, we quash the decision of the Fifth District Court of Appeal in Hawkes and direct that the trial court judgment be reinstated. With regard to the Florida House of Representatives v. Gordon, we find that the circuit court had jurisdiction to interpret the statute, but, for the reasons expressed, find that the trial court would have had to deny relief. Consequently, we deny the writ of prohibition and remand to the trial court with directions that the action be dismissed.
It is so ordered.
SHAW, C.J., and McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Section 119.11, Florida Statutes (1987), provides:

(1) Whenever an action is filed to enforce the provisions of this chapter, the court shall set an immediate hearing, giving the case priority over other pending cases.
(2) Whenever a court orders an agency to open its records for inspection in accordance with this chapter, the agency shall comply with such order within 48 hours, unless otherwise provided by the court issuing such order, or unless the appellate court issues a stay order within such 48-hour period.
(3) A stay order shall not be issued unless the court determines that there is a substantial probability that opening the records for inspection will result in significant damage.
(4) Upon service of a complaint, counterclaim, or cross-claim in a civil action brought to enforce the provisions of this chapter, the custodian of the public record that is the subject matter of such civil action shall not transfer custody, alter, destroy, or otherwise dispose of the public record sought to be inspected and examined, notwithstanding the applicability of an exemption or the assertion that the requested record is not a public record subject to inspection and examination under s. 119.07(1), until the court directs otherwise. The person who has custody of such public record may, however, at any time permit inspection of the requested record as provided in s. 119.07(1) and other provisions of law.
[2] We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution (class of constitutional officers).
[3] We have jurisdiction pursuant to article V, section 3(b)(7), Florida Constitution (prohibition).
[4] Fla.HB 370 (1978).
[5] Fla.HB 739 (1989); Fla. SB 810 (1989).