**In the Matter of the SEARCH OF OFFICE SUITES FOR WORLD AND ISLAM STUDIES ENTERPRISE 5620 East Fowler Avenue, Tampa Fl.**

**In the Matter of the SEARCH OF RESIDENCE OF SAMI AL–ARIAN 5207 East 127th Avenue Tampa, Fl.**

**In the Matter of the SEARCH OF OFFICE OF SAMI AL–ARIAN Located at the University of South Florida.**

**Nos. 95–487–MM to 95–489–MM.**

United States District Court, M.D. Florida, Tampa Division.

Jan. 17, 1996.

Robert O'Neill, Assistant United States Attorney, United States Attorney's Office, Tampa, FL, for U.S.

Gregg Darrow Thomas, David Bralow, Holland & Knight, Tampa, FL, for Tampa Tribune.

Robert Cannella, Tampa, FL, for Al–Arian.

### ORDER

McCOUN, United States Magistrate Judge.

THIS MATTER is before the court on the **Motion of The Tribune Company to Intervene and Petition for Access.** (Doc. 7). The Tribune Company, publisher of the *Tampa Tribune,* (hereinafter, "Tribune"), is seeking to obtain from the above files, a copy of the sealed search warrants, the probable cause affidavits, and the court's orders sealing these documents. The Government has not filed a response in opposition, however, the United States Attorney's Office orally presented its objections at the January 5, 1996 hearing on this matter. Dr. Al–Arian's counsel appeared and objected on his behalf.

■ At the outset, the court hereby **GRANTS the Tribune's Motion insofar as it seeks to intervene.** The press has standing to challenge an order sealing court documents. *In re Petition of Tribune Co.,* 784 F.2d 1518 (11th Cir.1986); *Newman v. Graddick,* 696 F.2d 796 (11th Cir.1983); *United States v. Valenti,* 987 F.2d 708 (11th Cir. 1993). The Motion is **MOOT in several respects.** This court's original Order sealing the application and affidavit for search warrant did not seal the actual search warrant, nor did this court seal its Order directing the affidavit to be sealed. As to these documents in each above referenced file, the Motion is **DENIED** as **MOOT.**

The remaining issue to be resolved is the Tribune's request for access to the Application and Affidavit for Search Warrant in each of the above referenced files. The Tribune argues that, of necessity, it must have access to the probable cause affidavits in order to review and possibly challenge the Govern-

ment's articulated reasons for sealing the documents. It is recognized by the Tribune that the Government may have compelling or "higher value" interests which will outweigh the press's and public's right to access, as where, for instance, the release of information would jeopardize an ongoing investigation, divulge the identity of the confidential informant, reveal the scope or direction of a criminal investigation or endanger the preservation of evidence. The Tribune asserts that these interests must be specifically set forth and established. Absent the existence of such considerations, the Tribune seeks access to the probable cause affidavits. Alternatively it asks the court to redact those documents as an alternative to complete denial of access.

Dr. Al–Arian's counsel opposes the unsealing of the documents based on his assertions that Dr. Al–Arian's privacy rights and Sixth Amendment right to a fair trial have already been jeopardized and will be further jeopardized if the documents are made public. By this argument, counsel urges that Dr. Al–Arian's reputation has been irreversibly damaged by press accounts of him and such injury will be compounded by the release of the sealed information. Counsel asserts that Dr. Al–Arian is a private figure, as opposed to a public figure, and seeks to remain as such. Counsel also suggests that further publicity would affect his client's right to receive a fair trial if indicted.

The Government has set forth grounds for sealing the probable cause affidavit in its Motion to Seal. It urges that the sealing of this information is necessary to protect and preserve its ongoing investigation, is necessary to protect cooperating witnesses and any identified sources, is necessary to prevent the disclosure of the scope and direction of its ongoing investigation and is necessary to assure the protection of Dr. Al–Arian's privacy interests and his right to a fair trial.

## I.

■ The current status of the law in this circuit establishes no clear constitutional right of access to such records. However, the right of access to judicial records pursuant to common law is well established. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978). This right extends to the inspecting and the copying of judicial records, but is not absolute. *Id.* Neither the Supreme Court nor the Eleventh Circuit have specifically addressed whether this common law right of access extends to records such as search warrants and probable cause affidavits.[1]

Several circuits addressing the issue have offered divergent opinions. The various decisions are succinctly restated in *In re Application of Newsday, Inc.*, 895 F.2d 74 (2nd Cir.), *cert. denied,* 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651, *reh'g denied,* 498 U.S. 892, 111 S.Ct. 238, 112 L.Ed.2d 198 (1990) ("Newsday"). There, the court states,

> In *Times Mirror Co. v. United States,* [873 F.2d 1210 (9th Cir.1989)] the Ninth Circuit held that there was no constitutional or common law right to inspect a warrant application during the pendency of the investigation. [*Id.* at 1218–19]. On the other hand, in *In re Search Warrant for Secretarial Area Outside the Office of Thomas Gunn,* [855 F.2d 569 (8th Cir. 1988)] the Eighth Circuit held that there was a qualified constitutional right of access to search warrant applications once the warrant had been executed, even if the investigation had not been completed. [*Id.* at 573]. Taking a middle position, the Fourth Circuit, in *In re Baltimore Sun Co. [v. Goetz,* 886 F.2d 60 (4th Cir.1989)], agreed with the Ninth Circuit that there was no constitutional right of access, but held that a common law right of inspection attached once the warrant had been filed. [*Id.* at 64–65].

In *Newsday,* the Second Circuit avoided the constitutional issue and affirmed that there was a qualified common law right of access to judicial records, including search

**1.** Research reveals that the Southern District of Florida has recognized a "limited First Amendment right of access to ... judicial documents," including search warrants and probable cause affidavits. *United States v. Shenberg,* 791 F.Supp. 292, 293 (S.D.Fla.1991).

warrant affidavits. *Id.* at 79.[2] Thus, the various decisions range from a standard of no access to these documents at the pre-indictment stage to a right of access once the warrant has been executed.

Although the Eleventh Circuit has not addressed the issue of closure in the context of search warrants, the case law suggests at least a common law right of access, if not a constitutional right of access at some stage of the criminal investigation process.

The Tribune suggests either a constitutional right of access, a common law right of access or both as grounds for unsealing the Application here. Upon consideration of the case law and for the following reasons, this court can find no constitutional basis for unsealing these records.

In *Valenti, supra,* the court set out the following elements of the constitutional analysis,

The Supreme Court has emphasized the following two considerations for determining whether a First Amendment right of access attaches to a particular process within a criminal proceeding: (1) 'whether the place and process have historically been open to the press and general public'; and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.' *Press–Enterprise Co. v. Superior Court of California for Riverside County,* 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 . . . .

*Valenti,* at 712.

Historically, warrant proceedings have been closed to the public. *See, e.g. Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Franks* the court recognized the necessity of allowing a post-indictment challenge to a search warrant affi-

davit, because the *ex parte* warrant proceeding makes an earlier challenge impossible. It appears, without dispute, that at least up to some ill-defined point in the process, the press and public have been generally excluded from the warrant process. Such exclusion does not raise First Amendment considerations.

That it is unquestionably acceptable, as a general practice, for warrant proceedings to occur *ex parte* and *in camera* is no doubt because of the practical reality that neither the press nor the general public can be said to play a positive role in the functioning of this part of the criminal investigation process.[3] At some point, possibly at the point in time of the return of the warrant or surely by the time of an indictment, the salutary effects of public access become real and positive. This court is satisfied, however, that the benefits attributed to public access do not pertain at the earlier stages of the process and depending on the circumstances of the case, may not pertain until much later in the proceedings.

■ Applying this framework of analysis, it is not unreasonable to conclude that, generally speaking, there is no constitutional right of access to warrant proceedings. Whether, at some point, there is a constitutional right of access to the warrant documents filed with the court has yet to be determined.

Without addressing the matter specifically, the federal rules, when read in conjunction with the common law, suggest that the filing of the warrant with the magistrate may be the point at which access is intended. Rule 41(g), Fed.R.Crim.P. envisions that once the search warrant is returned, it is part of the public file. The rule states,

Indeed, the press has here undertaken to investigate newsworthy matters and in the process developed information useful to law enforcement. However, in this court's experience, this is not a general occurrence and sound reasons exist to support a conclusion that, generally speaking, open access to early stages of the search warrant proceedings would have an unreasonably negative impact on the investigation of alleged criminal activity and the individuals who may be the subject of such investigation.

---

**2.** As noted in the case, the procedural posture of the case may have a bearing on the court's decision. The court in *Newsday* was confronted without request for access to a search warrant application at a point after the subjects of the inquiry had plead guilty to criminal charges. The court declined to decide the matter of access in the pre-indictment stage. *Id.*

**3.** Ironically, in this instance, the press itself, and in particular, the Tribune, took the lead in the investigation which now engulfs Dr. Al–Arian.

The federal magistrate judge before whom the warrant is returned shall attach to the warrant a copy of the return, inventory and all other papers in connection therewith and shall file them with the clerk of the district court for the district in which the property was seized.

*Id.* Because this matter may be resolved without deciding the constitutional issue, the court ventures no further opinion as to whether there is a constitutional right of access at a point after the warrant is executed.

■ However, the court does find that once search warrants are executed and returned, absent an order sealing the documents, both the search warrant and the affidavit are part of the public domain and subject to the common law right of access by the public.

In *Newman v. Graddick,* the court addressed the common law right of access. *Id.* 696 F.2d 796, 803 (11th Cir.1983). Relying on the standard established in the *Globe Newspaper* case, the court adopted the balancing test there annunciated. When deciding whether to grant a party's motion to seal or conversely the granting of a party's motion to unseal, the court is required to balance the historical presumption of access against any competing interest. *Id.* The factors advanced for closure must meet a measure of constitutional proportion, even though the right of access is pursuant to the common law.

■ The critical language adopted by the Eleventh Circuit comes from *Globe Newspaper Co. v. Superior Court for the County of Norfolk,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). There, the Court stated,

Although the right of access to criminal trials is of constitutional stature, it is not absolute.... But the circumstances under which the press and public can be barred from a criminal trial are limited; the State's justification in denying access must be a weighty one. Where ... the State attempts to deny the right of access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest. (Citations omitted).

*Id.* at 606–07, 102 S.Ct. at 2620. This compelling interest standard has been applied in both civil and criminal cases in this circuit. *See United States v. Valenti, supra; Brown v. Advantage Engineering, Inc.,* 960 F.2d 1013, 1016 (11th Cir.1992); *Wilson v. American Motors Corp.,* 759 F.2d 1568, 1571 (11th Cir.1985). The decisions in *Wilson* and *Brown* strongly support the general right of access to civil trials and to the contents of civil case files. Given the constitutional implications of the right of access to criminal proceedings, these civil cases would suggest an equally strong or stronger right of access to the records in criminal proceedings.

It is apparent that the balancing test in *Globe Newspaper* is the appropriate inquiry. Thus, the question becomes whether there is present compelling reasons for closure. As discussed below, this court affirms its earlier decision that the warrant application should remain sealed for the reasons stated by the Government in its Motion to Seal.

There is good reason to conclude that each of the considerations asserted by the Government would be impacted by the disclosure of the contents of the application and affidavit. This is so in spite of the fact that some aspects of the Government investigation are founded upon or have been initiated because of matters reported in the public domain. Given the nature of the investigation, the court concludes that there are compelling reasons to continue to seal the contents of the application and affidavit. In this court's view, it is both the nature of the investigation and the manner in which it is being conducted which require this determination. In most instances, this court is fully satisfied that once the warrant and application have been returned to the court, the public and press should have full access. The court cannot make that determination under the circumstances here evidenced.

## II.

■ The Government advanced several reasons for sealing the search warrant affidavits in its Motion to Seal.

The sealing of the search warrant affidavit will protect the integrity of an ongoing criminal investigation ... and help prevent tampering with witnesses and informants pending the outcome of the investigation, which may include warnings should criminal charges be brought, that federal criminal law prohibits conduct relating to intimidation of witnesses, jurors, and officers of the Court; conduct involving tampering with witnesses, victims or informants; and conduct involving retaliation against a witness, victim or informant, as well as attempts to commit any of the foregoing acts.

(Doc. 3 in 95–487–MM, 95–488–MM, & 95–489–MM) (internal citations omitted). At arguments, counsel for the Tribune acknowledged that a court must bring its own experience and common sense into the determination of whether or not the presented reasons are compelling. Indeed, the matter is one within the discretion of the magistrate. *See, Nixon, supra* at 599, 98 S.Ct. at 1312–13 ("[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case").

The court has again reviewed the warrant affidavits and the Government's Motion to Seal and concludes that the Government's reasons for sealing remain compelling in this case and outweigh the press's right of access. The affidavits contain the identifications of individuals that are subjects of the Government's investigation. They state, at length, the scope and direction of its investigation. References to cooperating witness(es) are made throughout the documents. All of

these factors support a finding that the Government's ongoing investigation would be frustrated if the affidavits were to be unsealed. The Eleventh Circuit has recognized that prejudice to an ongoing investigation is a compelling reason for closure. *United States v. Valenti,* 987 F.2d 708, 714 (11th Cir.), *cert. denied,* 510 U.S. 907, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993).[4]

Although the Government's interests are compelling, the court must here examine whether there are alternative means available to protect the investigation, short of sealing the entire document. The Tribune suggests that redaction may afford a less restrictive measure of protection. *See, Gannett Co. v. DePasquale,* 443 U.S. 368, 401, 99 S.Ct. 2898, 2916–17, 61 L.Ed.2d 608 (1979); *United States v. Valenti, supra* at 713.

While this court is fully cognizant of the public's and press's right of access and has carefully considered redaction of names and extraction of excerpts as a less restrictive means to protect the Government's investigation, in this instance, neither is sufficient to protect the Government's compelling interests. Redaction might protect the parties named in the affidavits, however, it offers no shield against revealing the other aspects of the Government's investigation. *Valenti; see also Matter of Search Warrants for National Builders Corp., 1000 Andrews Ave.,* 833 F.Supp. 644, 646 (N.D.Ohio E.D.1993). In *National Builders,* the court found redaction an ineffective alternative to sealing the entire document because the search warrant affidavit contained "detailed, specific information which, if disclosed, would compromise the ongoing government investigation. Virtually every page of the affidavit contains refer-

---

4. As indicated above, counsel for Dr. Al–Arian and the Government urge that the sealing is necessary to protect privacy interests of Dr. Al–Arian. Counsel further urged that the sealing is necessary to protect the Sixth Amendment rights of Dr. Al–Arian to a fair trial in the event he is indicted. On the basis of the arguments and evidence provided to the court, the court does not find either ground to be a compelling interest within the contemplation of the case law. *Newsday, supra* suggests that privacy interests which may qualify the right of access are those matters which touch upon "intimate relations." *Newsday* at 79. Here, counsel makes no such argument and this is not established. Furthermore,

counsel's argument that Dr. Al–Arian is not a "public figure" is irrelevant to the issues here and probably without merit in light of his circumstances. Furthermore, while he is concerned with his right to a fair trial, if he is indicted, nothing beyond the conclusory arguments of counsel is offered on this point. *Press–Enterprise Co. v. Superior Court,* 478 U.S. at 8, 106 S.Ct. at 2740 (requiring a specific showing of a substantial probability that a defendant's right to a fair trial would be prejudiced absent closure). While previous press accounts of Dr. Al–Arian have no doubt cast a cloud upon his reputation, he does not present evidence by which this court can justify closure on these grounds.

ences to conversations and events, and reveals the nature and scope of the on-going government investigation, including individuals not the subject of the search warrant." *Id.* at 646. A similar citation exists in the instant matter.

Extraction of excerpts is also inadequate in the instant case. The affidavits at issue are designed to support the Government's case of probable cause and each section builds on the next. The court has serious concerns that unsealing even a portion of the affidavit would reveal, either explicitly or by inference, the scope and direction of the Government's investigation. Even information already publicized cannot be unsealed because it is inextricably intertwined with the Government's argument for probable cause. The revelation of these matters would likely frustrate the ongoing investigation.

Therefore, this court finds that the most narrowly tailored measure of protecting the Government's compelling interests is not to unseal the search warrant affidavits at this time.

The court's Order to seal shall remain in effect until the Government moves to unseal the document or ninety (90) days after the date of this Order, whichever occurs first. The time frame may be extended on motion by the Government, if filed before the expiration of the ninety day time frame.

Accordingly, it is

**ORDERED** that the **Motion of The Tribune Company to Intervene and Petition for Access** is **DENIED.**

**Done and Ordered.**